Good morning. May it please the Court, Michael Levine from Hunt and Andrews Kurth on behalf of Appellant Treasure Island. Your Honors, I'd like to reserve three minutes for rebuttal. We're here today on a contract case, a little bit of a change of pace. It's a contract governed by Nevada law, and we ask the Court to reverse the dismissal of that case and remand it for trial pursuant to the approved and signed joint pretrial order that Judge Mahan entered prior to the case's dismissal by Judge Silva. And we ask that the Court exercise its discretion, if possible, to instruct that the case be assigned to a different judge on remand. In our briefing, we initially asked that the issue before the Court be certified to the Just last week, the Nevada Supreme Court, in the Blumenbrands case, a similar COVID-19 business interruption case, declined to exercise discretion to review a writ taken by the insurance companies in that case challenging a summary judgment dismissal by the District Court. I think it was a summary judgment denial. It was a summary judgment denial. I think you said dismissal, so I'm just trying to clarify. Denial by the District Court. Insurers challenged it. Nevada Supreme Court said, no, we're not going to review this. And why they chose not to review it was important. They felt that there was no question that needed to be clarified under Nevada law. Prior to that summary judgment, the Nevada Supreme Court decided the star surplus case. We refer to it as JGB Vegas star surplus. And in that case, the Court considered a, what I will call a standard form commercial property policy with business interruption coverage, similar to the policies that Your Honor, Judge Friedland and Judge Sung had looked at in other similar type cases. I believe the Tao case and the Oregon Clinic case. This is different. It's a different type of policy, and it's materially different because it includes affirmative coverages for communicable diseases, and that's very important. So the policy that was considered by the Nevada Supreme Court did not include those coverages, and the Court, similar to Your Honor's, analyzed that policy according to its plain meaning with all textual clues derived from that policy. So you might win on the communicable disease provisions, but that's not going to help you very much, right, because you can't get very much money under them. So I understand your argument that that is different and that you might win on that. Let's just assume that for a second. I'm really having trouble following why that means you win on the other things.  And you're right. We do. We absolutely should win on that separate issue. We win on the broader physical loss or damage issue because, as the district court recognized in the Blum and Brands case, the policy must be read as a whole. And all three of Your Honors, in other cases, in other contexts, have looked at context when interpreting policies, contracts, treaties, statutes, et cetera. The concept is the same, that we don't look at words in isolation. Context matters. And the Nevada Supreme Court has stated this explicitly, and it discussed it in the Star Surplus case, and in that referred back to the Ghilardi decision. And in Ghilardi, the Court was very clear that context matters. And we even when terms are not ambiguous, context matters. That makes sense. But, I mean, the communicable diseases coverage is an additional coverage that's provided under the contract, correct? It's an extension of coverage. So the AFM policy uses both terms. There are two of these disease coverages. One's for, it calls it property damage. The other is for business interruption. On the property damage side, it calls it an additional coverage. But when you look at the business interruption coverage in that policy, it clearly calls it an extension. Coverage is extended. And this was exactly the issue that was argued for two hours to Judge Williams in Bloom and Brands. And he said, very aptly, that if you were extending something, what are you extending it from? But is there any Nevada higher authority that says that the word extended can't be an additional? I don't believe there's law one way or the other on that issue. I mean, because we're applying Nevada law, so we've got to figure out what would Nevada think about this. And I just am not sure I've found anything that says that what your way of saying that extended must mean, it existed over here, too, instead of just this is an additional policy. Right. That there's anything in Nevada law that supports that. Well, let me look at it this way. Even if, assume it's only additional, and extension isn't even in the policy, we still have to give meaning to this in the context of the broader policy. And even better in this case, unlike Bloom and Brands, we have evidence in this case, and we have a sanctions order in this case, quite frankly, where the insurance company first lied to the court, said we don't have any information that informs of this meaning. And then when we found it in another case and brought it back to Nevada, they were sanctioned. And part of that sanction was a preclusion order saying you are not allowed to argue that a virus like COVID-19 cannot cause physical loss or damage to property. Well, I think they were not allowed to argue as a categorical manner that communicable disease cannot cause physical loss or damage, correct?  Communicable disease as defined in their policy. They retained the right to argue that the specific disease at issue here, COVID-19, did not cause loss or damage to property, correct? On the evidentiary level, yes. Okay. And that is the issue that JRB addressed in the context of the language of that policy, but that was the specific issue addressed by the Nevada Supreme Court, correct? But only in the context of the JGB policy, which again, didn't inform the broader meaning. Now, we know in the AF- But they do talk about this E. coli example in the E. coli case, and E. coli could be a communicable disease, and the court says it's different because it's like in the well, in the water, that's part of the physical property as opposed to something coming from people from the outside. I'm really struggling with why that wouldn't apply here. Well, E. coli doesn't meet the definition of communicable disease in the AFM policy. That has a very explicit definition, and it has to be a disease transmissible from person to person. Well, I think E. coli could be, depending on what kind of bodily fluids are helped or ... Maybe, but Your Honor is going exactly to where the evidence is, and four years of litigation before Judge Mahan, the experts have opined on these issues. So those are factual evidentiary issues that we were going to try. Are there any facts that were presented that are different from the facts that were described in JGB as to how COVID-19 operates? So JGB had no facts. That case- Well, but it taught ... Excuse me. It described certain aspects of the operation of COVID-19 and said, are there any facts here that say, oh, actually they were wrong about how COVID-19 operated? Vastly different. And I say that because we, again, had a four-year developed record with experts, with factual evidence of COVID-19 present, with the opinions of what it does, when it is present, and what it takes to remediate. And so what in JGB was wrong based on what you're saying is in the record here? It was a different policy. Okay, but what facts were wrong? What facts about the impact of COVID-19 on property and its ability to cause loss or damage to property? Are there any evidence here that they mischaracterized specifically the way in which COVID-19 impacts property? Well, again, they did not have the benefit of a record in JGB. But they make assumptions like you always do at a motion to dismiss. So they're assuming various things based on the pleadings about the facts. What facts did they assume in JGB are disproved by your record or even brought into question by your record?  And I apologize. I'm struggling because, again, motion to dismiss and allegations versus motion for summary judgment and evidence. And the evidence in our case lines perfectly with the policy in this case. So I'm having a hard time drawing an analogy. I don't see any similarities in my mind. Looking at a different policy, evidence versus naked allegations, they just don't align. So I think this case has to be assessed on its own merits, which is a different insurance policy, information from the insurance company that specifically says, in their words, predating COVID by years, that a communicable disease as they use it in their insurance policy contemplates physical loss or damage caused by that disease. That's their wording. That's how they train their insurance adjusters. And all of that, again, for years preceded COVID-19. So then COVID-19 comes along and all of a sudden they say, no, I can't do that. Can I bring you back to something you said right at the beginning? I was looking at your brief. So when you got up, your first statement was if we remanded, it should go to a different judge. Am I right? That's not in your briefs. It's not in our briefs, Your Honor. And I ask it because, and this gets to the very peculiar circumstances that brings us here today. So this case was four years in the making. I understand why you are unhappy that the new judge did something different than the old judge. But asking for a different judge is a pretty aggressive thing to do because it would mean that you think there's some bias or some problem with the second judge. And do you have any evidence of that? I do not. And I don't know what happened. I wish I did. But it's very odd. And I say this for several very specific reasons. If you look at what Judge Silva did in dismissing the case, it's evident to me that she didn't consider anything in the record because if she did, it seems like JGB was the new thing that had happened. But it wasn't new. It was six months prior. That decision was handed down in September of 2023, and Judge Mahan denied summary judgment to AFM in March of 2024. So there was nothing new. And in fact, both sides put the JGB decision in front of Judge Mahan as supplemental authority. He was keenly aware of that decision and chose not to follow it for the reasons that we've articulated in the brief that I'm explaining today. It is a different policy, and it is not controlled. Judge Williams in the Blum and Brands case did exactly the same thing. The insurance company said, JGB controls. He listened to the argument, and he issued a very well-reasoned decision and said, no, it doesn't. There was a motion for reconsideration that Judge Silva had to address, right? And the proper scope of that, I know that there are issues that we may talk about, some of them with your colleague. But there was a motion for reconsideration that had to be addressed upon reassignment. And presumably in doing so, whether it had already been thought the first time around, obviously the judge saw JGB and had thoughts about it. And whether or not that was appropriate, that's not really an issue that's reviewable on appeal, correct? Right. So the decision, yes, there was a motion for reconsideration, and Judge Mahan chose not to act on it. And in fact, instead, considered and signed the party's joint pretrial order and sent cases going to trial. And it was then Judge Silva who took that motion. We know that it didn't get due consideration because that motion, in that motion, AFM did not even ask that the court do anything about the communicable disease portion of the claim, yet she dismissed it anyway, right? So it did not get due deference. It didn't get any deference. Am I — maybe I'm misunders — misremembering, but am I remembering right that the first summary judgment order did not talk about JGB? It does not mention it explicitly. And that's why there was reconsideration motion. That was their argument, right? But, again, prior to Judge Mahan's decision, both sides submitted — we submitted a notice of supplemental authority. The insurance company opposed it, oddly. I don't know why, because they now say, well — But that was — sorry, was the supplemental authority after — I mean, I'm not remembering. After the supreme court or before? It was before, right? It was before Judge Mahan's decision. Right. But was the motion for supplemental authority when there was already a Nevada supreme court opinion? Yes. It was — it was submitting the Nevada supreme court opinion. So Judge Mahan squarely had it in front of him, both in our filing and the insurance company. But it's possible that it somehow was overlooked because it wasn't mentioned. He didn't mention it. I don't know. He didn't have arguments, so I don't know what the thinking was. But for Judge Silva to then, in her decision, write, the district court failed to consider it, I don't think Judge Silva knows any more than I know how and whether Judge Mahan considered it. So, again, very strange. Well, I mean, well, you know, one would say that, especially in a context without oral argument, that the best evidence of what a district court judge has considered is the written opinion that they offer to the parties resolving the issue, correct? No, I don't agree, because there are many things we put in front of courts that don't get mentioned in the decisions. And that does not mean — and I would never presume that the court didn't consider it. In fact, it's the opposite. I assume the court considered everything that was put in front of it. It may not like it and it may not mention it, but that's a different issue. So, again, it brings us back to — and I see I've already blown through my reserved time almost — different insurance policy that is informed by the context of that policy. And if we follow, again, the decisions that Your Honors have rendered in other cases repeatedly on context, look at what loss code 60 says from the insurance companies on files. It clearly says, explicitly, physical loss or damage caused by a communicable disease. If they wrote that years before, how on earth can they argue that it doesn't happen and can't happen? We know it can. It's an evidentiary question for the experts. I think I'd better cut you off. I'll give you a minute for rebuttal, but if you want that, you should stop now. Yes, thank you. May it please the Court, Scott Johnson, representing a third party. Affiliated FM Insurance Company, or AFM for short. This Court should affirm the judgment below because the district court correctly determined that there's no insurance coverage for Treasure Island's claimed losses. I'd like to address — start by addressing this context argument. Context is talking about other language in the policy, and the only language that they point to is the communicable disease provisions, and the communicable disease provisions do not require physical loss or damage. So it cannot possibly broaden the scope of physical loss or damage that the Court and JGB considered did not include anything caused by COVID-19. COVID-19, according to the JGB Court, does not cause or constitute physical loss or damage. The Bluing-Brands case is different factually. It's also a trial court decision. And the Supreme Court denied it on procedural grounds. There was no important rule of law that would impact other cases. They said if there's going to be an issue on — I mean, a challenge to the legal issues, they can address them on appeal, and that's what will probably happen. But it can't be read as saying that the communicable disease coverages were somehow already existent under the AFM policy. They're not. The property damage provision is an additional coverage, and if it's an additional coverage, it clearly cannot be part of the original coverage under the policy. In the business interruption communicable disease provision, it is an extension, but it is providing business interruption coverage that did not otherwise exist under the policy. It's very clear if you look at the other types of extensions that the policy provides, like attraction property, ingress-egress, civil authority, just to name a few, those types of losses, if you have damage to attraction property, can create or provide coverage for business interruption. That's not a coverage that existed under the base policy. Ingress-egress, if you're losing business interruption because of the lack of ingress-egress, that coverage doesn't exist under the base policy. And the same is true with communicable disease provision. That coverage does not exist under the base policy. And the JGB case established clearly that physical loss or damage is not caused by COVID-19. And the reason, you know, counsel mentioned it was brought to the court's attention in supplemental authority. They brought it to the court's attention, but Judge Mahan had already ruled that he was not going to entertain any more motions for supplemental authority. He was tired of the parties doing that. That's the reason it was denied. And it's very clear Judge Mahan did not consider the JGB case. If you look at his opinion, it's not mentioned. Why — is it true that you opposed alerting the court to that opinion? I'm sorry? Is it true that you opposed alerting the court to that opinion? On the grounds that it violated the judge's prior order. And in our — if you look at our opposition to their motion for supplemental authority, we argued that JGB supported our position. We didn't think it was not applicable. But Judge Mahan clearly did not consider it. He would have mentioned it in his opinion if he did. And that was the reason we filed the motion for reconsideration, asking the court to reconsider its opinion and consider JGB, which established, again, that COVID-19 does not cause or constitute physical loss or damage. And that's the end of the coverages that they seek on provisions that require physical loss or damage as a trigger. That's a little bit weird. You told him not to consider it, but then you asked for reconsideration to consider it? Well, again, there was a court order that said, parties, you may not file any supplemental authorities. And we pointed that out to the judge. And they violated that order. And that's — we noted that to the court. And that's the basis for the court's rejection of the supplemental authority. But again, in arguing that, we alternatively pointed out that JGB supported our position. We clearly expected the court to consider it. With respect to the communicable diseases coverage provisions, that you hadn't expressly sought reconsideration on that order, and Judge Silva nonetheless granted — I think didn't really address them, but the order seemed to dismiss all of the claims, correct? Grant summary judgment as to all of the claims. Am I right that on appeal, your only argument in defense of that decision is that Treasure Island failed to provide sufficient evidence that there was actual presence of COVID-19 at the property prior to the date of closure? That, your honor, along with the absence of any causation. So we agree — And why — again, those are, you know, ground summary judgment. Those are factual issues. So why was — why was the expert report that they provided and the evidence that they provided that they were planning for an imminent closure not sufficient to at least create a factual dispute that has to go to trial, as opposed to being a basis for summary judgment? Well, again, there's two components. One, they have to have the actual, not suspected presence of a communicable disease. And all they submitted was evidence of some employees had symptoms, and some expert who said there was statistically certain that there was COVID on the premises. And why wouldn't that be sufficient for a jury to conclude that sort of intuitively that COVID was present on those premises of a busy casino prior to March 17, 2020? The words in the policy are actual. Actual is defined as existing in fact. Right. And that's a factual question, though, correct? I mean, does the policy say — there's nothing in the language of the policy that says actual presence as determined by a contemporaneous test of some kind, correct? Correct. But, again, actual means existing in fact. Statistics are not facts. That's a probability. No, well, they're evidence. They're testimony from which one can draw conclusions of fact. We would disagree with that. Again, I don't think it meets the standard of actual, existing in fact. Statistics are merely probabilities. It's not actualities, which is what the policy requires. And second, the second element — I mean, is there really a dispute that — honestly, is there an honest dispute that there was COVID present in this busy casino property prior to March 17, 2020? They haven't established that. And we cited case law in our brief that a number of policyholders argued, hey, COVID's everywhere. It had to be everywhere. And courts have rejected that as being sufficient evidence of establishing the presence of COVID-19. Well, I've looked into those cases. Those cases, I mean, they were bare allegations that you can infer from the fact that COVID was everywhere, that it was here. And courts said, you know, for example, you didn't allege that there was someone sick showing COVID symptoms on the property. But we do have that here. I don't think we have that here. I mean, they have testimony about at least two individuals who showed symptoms months before. Yeah. And as we pointed out in our brief, and the CDC says this, you can't tell the difference between symptoms of a flu and symptoms of COVID without a test. And what tests were available in early March 2020? PCR tests that people took. That's how they discovered the presence of COVID in the U.S. in January of 2020, through a test. Right. At some point, a fact finder has to make a finding of fact about whether there was COVID present. But I think there's a, you know, we're on your motion for summary judgment. We're supposed to look at all the record in the light most favorable to the non-moving party. Couldn't a reasonable fact finder find, based on the evidence here, that COVID was actually present? We think it's insufficient as a matter of law. That's an argument you can make to the fact finder. You think it's insufficient as a matter of law. Yeah. Again, we've got two things. We've got the symptoms. Two employees apparently had symptoms. Courts have, appellate courts have ruled that's not enough. That's not the actual presence of a communicable disease. That's a suspected presence. But you have the expert saying that given the demographics and the number of people, the 99.99% certainty. In any other context, that is enough to create a question of fact, right? When an expert is saying the cause here or the fact here is 99% certain, there's, are you, I mean, what you're arguing seems completely frivolous to me. I don't understand how you could argue that that doesn't create a question of fact. Well, I'm sorry you think it's frivolous, but I disagree. I think that's only showing a probability. And then you have the- And did you, and there was no motion, did you move to exclude the expert testimony on any grounds under 702? No. Motions in limited had not been filed yet. But in opposition, or in, you know, if that was put in that summary judgment in opposition, you didn't file, you didn't say that judge, please disregard this expert's testimony. It's not valid. It's excludable under 702? Correct. We did not as part of the summary judgment motion. But there's a second component to the communicable disease claim, and that's the causation piece. So you have to have a causal link between the presence of COVID and the closure of the business. These employees had symptoms in January of 2020. They didn't close in January 2020. The other employee had symptoms in February of 2020. They didn't close in February 2020. The expert says COVID was statistically likely since January 1 of 2020. They didn't close in January. They didn't close in February. But they have someone who's saying, who's testifying under oath that they would have  That's, well, that's speculative, and that's not what happened. They closed only because the state of Nevada ordered all casinos in the state to close. Again, isn't that, I mean, we're not here to resolve credibility disputes. You have someone saying we already decided to close. So you can argue to the jury that that's, you shouldn't believe that testimony, but that's not our role here on a motion for summary judgment. Is that correct? Well, again, that evidence is not what happened. What happened is they closed because the state of Nevada ordered all casinos to close statewide. You're asking us to disregard, you know, someone saying we had already decided to close. Yeah. And if you look at their complaint, they don't make any mention of that. If you look at their complaint, all they allege is for the reason they closed is the state of Nevada's order. Is there, I mean, it seems like that you don't have a very strong argument on the factual issue. Is their case law saying that under a policy like this, even if a right to coverage would have arisen under the circumstances, factual circumstances presented, a intervening cause like the shutdown order here results in the denial of coverage? I mean, there's sort of a legal question that seems implicit in what you're arguing, which is let's assume they've put on enough evidence to show they would have closed two days afterwards. Is there Nevada law that says the fact that there was this intervening cause means that they're not entitled to coverage under their insurance provision? No, but there is the ins at the sea case in California that this court cited in the Circus Circus case on causation, and they basically said, you have to look at it this way. What would have happened if Treasure Island had completely sterilized its premises premises the day after the governor ordered the shutdown of the casinos? What would have happened? They still would have been closed. Not because of any presence of COVID-19, but because of this order from the governor. And they reopened when the governor said, hey, it's OK now to reopen, even though their expert says, you know, COVID was on site. The presence of COVID had absolutely nothing to do with the closure of Treasure Island. The only thing and the only reason it closed is because the governor ordered it to be closed. And that's the second piece of this communicable disease coverage claim, the causation piece. Even if you agree, yeah, OK, there was COVID on the property, didn't cause their loss. There is no coverage under that communicable disease provision. I think I'm about out of time. If the panel has any other questions, I'm happy to address those. Otherwise, I thank you for your time. Thank you. Let's put a minute on the clock for rebuttal. Thank you, Your Honors. Let me address quickly the points that counsel made, because some of them, quite frankly, are, I can't even say the word.  Treasure Island testified. Corporate representatives testified. It was not disputed that they closed prior to any government order instructing anybody to close in Nevada. By one second or something, though? Is that what you mean? No. I forget the exact period, but it wasn't, oh, gee, we hear an order's coming. We're going to order closure. Well, I thought it was something like that. And they explained their reasoning. I thought the order went into effect at midnight and they closed at 1159 or something. Is that wrong? They had made the decision. OK, that's different. The decision to close, but the actual closure. You were just saying they closed before. That's not true. Right. Let me correct. They made the decision to close, which is what matters. Why did they close? And this goes to the causation issue, which is 100 percent a factual issue that was never appropriate and was not decided on summary judgment. Causation was not the issue. This was not about causation. So it really shouldn't be an issue here. In terms of showing presence, again, depositions were taken. I deposed the corporate representative from the insurance company and asked them. At the time they wrote the policy, which preceded covid, and you sold this insurance. How did you expect a policyholder to ever establish the requisite elements to trigger this coverage? And I got a jumbled bunch of answers. But what we finally distilled it down to were there are multiple ways to do it. You can show somebody sick, obviously not by any PCR testing because it didn't even exist at the time. Or you could use contact tracing. And there were several other methods that the designee articulated. And remarkably, I said, well, did you ever. I think I need to cut you off because you're over your time and I think we understand your argument. So thank you both sides for the helpful arguments. This case is submitted and we're adjourned for the day. All rise.
judges: FRIEDLAND, SUNG, Pitts